THE UNITED STATES OF AMERICA *vs.* WONG KOCK YII, *et al.*

June 9, 1906.

*Statutes prohibiting and regulating Chinese immigration applied by a subsequent statute to Chinese immigration from island territory to mainland territory of the United States—Construction of such subsequent statute:*

Certain statutes prohibiting and regulating the immigration of Chinese persons to the United States and their residence therein were ''re-enacted, extended and continued'' subject to treaty stipulations, by a subsequent statute, which provided that such re-enacted laws shall apply to the island territory of the United States ''and prohibit the immigration of Chinese laborers, not citizens of the United States from any island territory to the mainland territory of the United States.'' *Held*, that such re-enacted statutes as make the aiding and abetting of the landing in the United States of a Chinese person not lawfully entitled to enter therein, a misdemeanor, are so far amended in their application to island territory, by such re-enacting statute as to make the aiding and abetting of the landing on the mainland territory of the United States of a Chinese person not lawfully entitled to enter therein from such island territory, a misdemeanor also.

*Criminal Law*: Demurrer to indictment for conspiracy.

*Robert W. Breckons*, U. S. District Attorney, for Plaintiff.
*Atkinson, Judd & Mott-Smith*, Attorneys for Defendants.

DOLE, J. The point of the demurrer relied upon is as follows:

'' The facts stated in said indictment do not constitute a crime.''

This is an indictment for conspiracy charging that the defendants conspired with other persons to the grand jurors unknown to feloniously aid and abet the landing in the State of California in the United States, from some vessel from the Territory of Hawaii, of a certain Chinese laborer, a subject of the Empire of China, who was not a member of the class of Chinese persons permitted by the laws of the United States to proceed from the Territory of Hawaii to the said State of California.

The act of April 20, 1902 (32 Stat. L., part 1, chap. 641, p. 176), by its first section, re-enacts all laws then "in force prohibiting and regulating the coming of Chinese persons, and persons of Chinese descent, into the United States, and the residence of such persons therein"; and also certain sections of "An act to prohibit the coming of Chinese laborers into the United States," approved September 13, 1888 (25 Stat. L., chap. 1015, p. 467), which act was made subject, in part at least, to the ratification of the pending Chinese treaty which, however, was never ratified. The said section further provides that such re-enacted laws shall "apply to the island territory under the jurisdiction of the United States, and prohibit the immigration of Chinese laborers, not citizens of the United States, from such island territory to the mainland territory of the United States, whether in such island territory at the time of cession or not."

Section 11 of "An act to amend an act entitled 'An act to execute certain treaty stipulations relating to Chinese' approved May 6, 1882" (22 Stat. L., chap. 126, p. 58), approved July 5, 1884 (23 Stat. L., chap. 220, p. 117), provides as follows:

" That any person who shall knowingly bring into or cause to be brought into the United States by land, or who shall aid or abet the same, or aid or abet the landing in the United States from any vessel, of any Chinese person not lawfully entitled to enter the United States, shall be deemed guilty of a misdemeanor."

Counsel for the defendants contend that whereas the joint resolution of annexation (30 Stat. L., p. 750) merely prohibits any Chinese from entering the United States from Hawaii, and the organic act (31 Stat. L., chap. 339, p. 141) prohibits the immigration of Chinese laborers into the United States and the Hawaiian Islands, and the said act of April 29, 1902, appears to be the re-enactment of such provisions, it must be taken as a mere prohibition without creating an offense against the United States, and therefore the charge of conspiracy does not lie. He further contends that there is no specific amendment to section 11 of the act of July 5, 1884, above cited and therefore that such section is solely applicable to persons seeking to enter the United States, including its insular possessions, from a foreign country and does not apply to a person seeking to enter the mainland from the Territory of Hawaii.

If the provision of the act of April 29, 1902, "and said laws shall also apply to the island territory under the jurisdiction of the United States," went no further, the contention that such act merely extended the statutes against the entry of Chinese from foreign countries to the United States, to the insular possessions, would have great force; but the additional words, "and prohibit the immigration of Chinese laborers, not citizens of the United States from such island territory to the mainland territory of the United States," certainly show an intention on the part of Congress to prevent such immigration. The prohibition of such immigration is to be enforced by applying the provisions of the re-enacted laws to the insular possessions. Section 11 of the act of July 5, 1884, provides that any person who shall "aid or abet the landing in the United States from any vessel, of any Chinese person not lawfully entitled to enter the United States, shall be deemed guilty of a misdemeanor," etc. This is one of the statutes which is made to apply to island territory and to prohibit the immigration referred to. Has not Congress thus clearly enacted that any person who shall aid or abet the landing on the mainland territory

of the United States from any vessel of any Chinese person of the class referred to, from the insular possessions of the United States, shall be guilty of a misdemeanor? And is not such section constructively amended to that extent in its application to such insular possessions?

"To arrive at the real meaning, it is always necessary to take a broad, general view of the Act, so as to get an exact conception of its aim, scope and object." *Endlich, Interpretation of Statutes*, sec. 27.

The demurrer is overruled.